```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                     )
LAUREN HAMILTON and                  )
SHAUN HAMILTON,                      )
                                     )
              Plaintiffs,            )
                                     )    Civil Action
v.                                   )    No. 20-11307-PBS
                                     )
YOUNG MANAGEMENT, LLC d/b/a KORO     )
SUN RESORT; CHIPETA SUN LODGE LLLP;  )
and SOUTHWEST SOUTH PACIFIC, LLC;    )
                                     )
              Defendants.            )
_____)
```

**MEMORANDUM AND ORDER**

December 16, 2022

Saris, D.J.

While on vacation at the Koro Sun Resort in Fiji, Plaintiff Lauren Hamilton was injured when the top of a poolside lounge chair separated from its base, falling on her left foot and severing her big toe. She and her husband Shaun bring this action alleging breach of contract, negligence, and loss of consortium against defendants Young Management, LLC d/b/a Koro Sun Resort ("Young Management"), Chipeta Sun Lodge, LLLP ("Chipeta"), and Southwest South Pacific, LLC ("Southwest"). Defendants have moved to dismiss for lack of personal jurisdiction and forum non conveniens. The Magistrate Judge issued a Report and Recommendation opining that the Court should allow the motion to dismiss; Plaintiffs objected.

[1]

The Court denied the motion to dismiss without prejudice to renewal following jurisdictional discovery. Jurisdictional discovery is now complete and the parties have filed supplemental briefs on the motion to dismiss. After hearing and review of the record, the Court **ALLOWS** the motion to dismiss Chipeta and Southwest but **DENIES** the motion to dismiss Young Management.

## FACTUAL BACKGROUND

### I.   The Parties

#### A.   Plaintiffs

Lauren and Shaun Hamilton reside in Woburn, Massachusetts. Plaintiffs were married at all times relevant to this case.

#### B.   Young Management

Young Management was a Colorado limited liability company based in Ridgway, Colorado. Its sole owner and managing director was Jack Young, a resident of Ridgway, whose daughter Merlyn Young Ellis served as Young Management's Director of Marketing and Sales. Young Management was the United States booking agent for Koro Sun Resort in Fiji.[1] In that capacity, it retained a 30% commission on all reservations it booked at the Koro Sun Resort, with the remaining 70% remitted to Koro Sun Pte Limited. Young Management had one employee, Marissa Brunner, who worked under Young and

---

[1] The resort is itself operated by Fijian corporation Koro Sun Pte Limited, in which Jack Young has an 85% interest and Merlyn Young Ellis has a 15% interest.

Ellis's direction as the Reservations Manager for the resort. Young Management was dissolved on May 23, 2019.

### C. Southwest

Southwest has served as the Koro Sun Resort's booking agent since Young Management's dissolution. It, too, is a Colorado LLC with its principal place of business in Ridgway, Colorado. Jack Young is the sole owner and managing director of Southwest, with Merlyn Young Ellis serving as Director of Sales and Marketing, and Marissa Brunner the North American Koro Sun Resort Sales Agent. As with Young Management, Southwest has an unwritten agreement with Koro Sun Pte Limited whereby it retains a 30% commission on all reservations. Southwest has operated the website swspacific.com since June 2019.

### D. Chipeta

Chipeta is a Colorado limited liability limited partnership with its principal place of business in Ridgway, Colorado. It operates the Chipeta Solar Springs Resort, also located in Ridgway. Chipeta further owns and operates the website chipeta.com. Jack Young and his wife, Patsy Young, are each 50% owners of Chipeta, while Merlyn Young Ellis works as a marketing consultant. Marissa Brunner has sporadically made reservations for Chipeta on an unofficial basis and was paid to do a marketing campaign for Chipeta in 2020.

## II.     Leadup to Plaintiffs' Trip

### 1.     Communications Between Plaintiffs and Brunner

In early 2017, Lauren and Shaun Hamilton began planning their honeymoon to the Koro Sun Resort in Fiji.  They reviewed the interactive website korosunresort.com from their Massachusetts home to view possible rates, dates, and services.[2]  Plaintiffs noted that the website listed a phone number and the email address marissa@korosunresort.com and sent an email to that address asking about a potential stay at the resort.  Working from her home office in Colorado, Marissa Brunner first emailed Shaun Hamilton on March 29, 2017 advising him of a package involving complementary meals and some sample quotes for a 7-night stay.  Shaun replied with some questions, and Brunner provided additional information in emails dated March 30, March 31, April 3, and April 4, 2017.  Brunner sent booking forms to Shaun on April 4, 2017, and, while in Massachusetts, he and Lauren contracted for a September 2017 stay at the resort using their Massachusetts address and contact information.

On August 14, 2017, Shaun emailed Brunner asking to change the reservation.  Brunner sent two emails on August 14 and 15 about the modified stay and final payment.  The two again emailed repeatedly in late August and September 2017 about a reservation

---

[2] The website is registered to Jack Young.

[4]

upgrade, meal plan information, invoicing, and activities and excursions.  Young Management invoiced and processed the sale, took its 30% booking commission, and remitted the remainder to Koro Sun Pte Limited.

### 2. Young Management Advertising

When Plaintiffs first made their reservation in April 2017, Brunner entered their contact information in a property management application, WebRezPro.  Plaintiffs' email addresses were automatically entered onto Mailchimp email lists and they began receiving advertisements from Young Management about Koro Sun Resort trips roughly once or twice per month.  At least five other Massachusetts residents received 12-24 of these advertisements each year between May 2018 and March 2020.  Several others received advertisements in previous years.  Ellis also coordinated certain nationwide Google AdWords campaigns.  Approximately one-half of one percent of Young Management's bookings between April 4, 2017 and March 31, 2019 were from Massachusetts residents.

### III. The Injury

The Hamiltons traveled to the Koro Sun Resort on September 28, 2017.  Early in the trip, Lauren Hamilton went to the resort's pool and began using a concrete lounge chair.  Suddenly, the chair's top separated from its base and crushed her left big toe, detaching it from her foot.  She went to two hospitals in Fiji, the second of which conducted a debridement of her stump, removed

pieces of shattered bone, and placed a skin graft on the site of the injury. On September 30, 2017, she returned to Boston for treatment at Massachusetts General Hospital ("MGH"). MGH physicians removed the skin graft, which was determined to be unviable, and conducted another surgery to close the wound and fight infection. Ms. Hamilton incurred significant medical expenses and lost wages. She is permanently disfigured.

On October 6, 2017, Marissa Brunner emailed Shaun Hamilton offering her sympathies and notifying him that Plaintiffs' trip would be refunded in full.

## DISCUSSION

### I. Personal Jurisdiction

#### A. Legal Standard

The Court adopts the standard set forth in Magistrate Judge Cabell's Report and Recommendation, which is reproduced below in full.

*1. General Principles of Personal Jurisdiction*

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction by satisfying the forum's long-arm statute and the requirements of the U.S. Constitution. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 290 (1980). Where, as here, there has been no evidentiary hearing, the court

applies the *prima facie* standard and takes the specific facts affirmatively alleged by the plaintiff as true, regardless of whether these facts have been disputed, and construes them in the light most favorable to the plaintiff. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). A plaintiff cannot, however, rely on "unsupported allegations" in its complaint but "must put forward evidence of specific facts to demonstrate that jurisdiction exists." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (citations and quotations omitted). The court can add to the mix facts put forward by the defendants, to the extent that they are uncontradicted. See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009).

As this is a diversity suit, the court acts as "the functional equivalent of a state court sitting in the forum state." Id. (citations and quotations omitted). As such, to make a *prima facie* showing of personal jurisdiction, the plaintiffs must demonstrate that the exercise of jurisdiction is (1) permitted by Massachusetts's long-arm statute and (2) comports with the U.S. Constitution's Fourteenth Amendment Due Process Clause, by showing that each defendant has sufficient "minimum contacts" with Massachusetts "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42,

52 (1st Cir. 2002) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

*2.   Massachusetts's Long-Arm Statute*

M.G.L. c. 223A, § 3 provides that "a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from" various activities within or outside the Commonwealth.  *Inter alia*, personal jurisdiction is proper in an action arising from a defendant "transacting any business in this commonwealth" (§ 3(a)), "causing tortious injury by an act or omission in this commonwealth" (§ 3(c)), or "causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business . . . in this commonwealth" (§ 3(d)).

*3.   The Due Process Clause*

To satisfy the Fourteenth Amendment's Due Process Clause, a plaintiff must show there is either "specific" or "general" personal jurisdiction.  Specific jurisdiction is claim-specific and requires a "demonstrable nexus" between the plaintiff's claims and the defendant's forum-based activities. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (citations omitted).  General jurisdiction, on the other hand, exists when the defendant has "engaged in continuous and systematic activity"

[8]

in the forum state that is unrelated to the suit.  Id. (citations omitted).

The Plaintiffs argue only for specific jurisdiction here. The "demonstrable nexus" required to establish specific jurisdiction can be created only by the Defendants' contacts with the forum state.  See Harlow v. Children's Hosp., 432 F.3d 50, 58 (1st Cir. 2005).  In analyzing such contacts, the court must consider three factors: relatedness, purposeful availment, and reasonableness.  See Astro-Med, 591 F.3d at 9.

Because Massachusetts' long-arm statute may impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution, a court should consider a plaintiff's satisfaction of the long-arm statute first before considering the due process requirement.[3]

---

[3] The First Circuit has in the past endorsed an approach that bypasses a consideration of the long-arm statute and proceeds directly to consider the constitutional test for determining specific or general jurisdiction.  See, e.g., Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. 2011) ("We have construed the Massachusetts long-arm statute as being coextensive with the limits permitted by the Constitution" and "thus turn directly to [the Due Process considerations].").  More recently, though, the Massachusetts Supreme Judicial Court ("SJC") has opined that the long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process, and for that reason has instructed courts to first make a determination under the long-arm statute before turning to the constitutional question.  SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017).  This Court proceeds accordingly.

**B.     Analysis**

*1.    Long-Arm Statute*

Plaintiffs assert that the exercise of jurisdiction is authorized by Section 3(a) of Massachusetts's long-arm statute because Defendants transacted business in the commonwealth. To satisfy Section 3(a), Plaintiffs must show that (1) defendants attempted to participate in the economic life of the commonwealth, and (2) the transacted business was a but-for cause of the alleged injury. See Cossart, 804 F.3d at 18 (citing Tatro v. Manor Care, Inc., 625 N.E.2d 549, 551 (Mass. 1994)). These requirements are "construed broadly." Tatro, 625 N.E.2d at 551 (citation omitted). In general, "the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy [Section 3(a)]." Id. at 551–52.

Here, Plaintiffs have submitted evidence showing that Young Management systematically solicited business in Massachusetts. Young Management sent dozens of email advertisements per year into the commonwealth during the period when Plaintiffs booked their trip to the Koro Sun Resort. Marissa Brunner, acting on behalf of Young Management, also emailed Shaun Hamilton repeatedly at his Massachusetts home over a six-month period, sending him offers for stays at the resort and helping him make his reservation after he initially expressed interest. Other Massachusetts courts have found on similar facts that a defendant hotel and/or booking agent

transacted business in Massachusetts for purposes of Section 3(a). See Tatro, 625 N.E.2d at 552; Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 63 (D. Mass. 2001). Further, Ameral v. Intrepid Travel Party, Ltd., 128 F. Supp. 3d 382, 395 (D. Mass. 2015) is not to the contrary. In that case, the court found that the defendant booking agent had not purposefully availed itself of the privilege of conducting activities in the commonwealth because "Plaintiff initiated and pursued the booking of her trip without any alleged affirmative solicitation or communication from" the booking agent. Id. Here, in contrast, Brunner reached out to Plaintiffs with deals and offers after they initially inquired about staying at the resort, encouraging them to give Young Management their business. The Court finds that Young Management solicited business from residents of Massachusetts.

Likewise, Brunner's solicitation was a but-for cause of Lauren Hamilton's injury. Without Young Management's solicitation of Plaintiffs' business and facilitation of their hotel booking in Massachusetts, Plaintiffs would not have traveled to the Koro Sun Resort and Lauren Hamilton would not have been injured by the resort's lounge chair. Accordingly, Section 3(a) of Massachusetts's long-arm statute encompasses Young Management's activities in the commonwealth.

In contrast, Plaintiffs have not shown that the long-arm statute extends jurisdiction over Southwest or Chipeta. It is

undisputed that Southwest did not exist at the time when Plaintiffs booked their trip and that Chipeta (1) operated the Chipeta Solar Springs Resort in Colorado and (2) was not involved in making reservations for the Koro Sun Resort.  In 2017, Young Management alone solicited business for the Koro Sun resort from Massachusetts residents generally and Plaintiffs specifically.

Absent direct evidence in favor of personal jurisdiction over Southwest and Chipeta, Plaintiffs argue that they and Young Management are alter egos of each other and of Jack Young.  In Massachusetts, there is "a strong presumption of corporate separateness." Novi Footwear Int'l Co. v. Earth OpCo LLC, No. 22-cv-10952-RGS, 2022 WL 16640729, at *2 (D. Mass. Nov. 2, 2022) (citing Scott v. NG U.S. 1, Inc., 881 N.E.2d 1125, 1131–32 (Mass. 2008)).  Courts will not pierce the corporate veil based solely on a showing of common ownership and management. See My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748, 751–52 (Mass. 1968). In determining whether to disregard the corporate form, Massachusetts courts analyze twelve factors:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; (12) use of the corporation in promoting fraud.

[12]

Evans v. Multicon Constr. Corp., 574 N.E.2d 395, 398 (Mass. App. Ct. 1991) (citing Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 14-16 (1st Cir. 1985)).

On the existing record, and after reviewing the relevant factors, the Court declines to pierce the corporate veil to bring Southwest and Chipeta within the reach of the Massachusetts courts. Plaintiffs point to Jack Young's ownership or joint ownership of all three entities, Merlyn Young Ellis and Marissa Brunner's similar roles, the fact that the three companies shared an address, and their common purpose of supporting Jack Young's two hotels. Plaintiffs also scrutinize Young Management and Southwest's unwritten agreements with Koro Sun Pte Limited whereby they retained 30% commissions on each reservations they booked. Missing, however, is any evidence that Jack Young disregarded corporate formalities, mixed assets between the various entities, or operated the companies as a front to perpetrate fraud or escape the Court's jurisdiction. Young Management, Southwest, and Chipeta appear to have functioned as separate entities, with Southwest succeeding Young Management's duties without taking over its assets. The Court finds that veil piercing is unwarranted, and it will not exercise jurisdiction over Southwest or Chipeta. The Court proceeds to analyze whether it can exercise jurisdiction over Young Management consistent with the Due Process clause.

[13]

### 2.   *Due Process Clause*

Whether the Court can exercise specific personal jurisdiction over Young Management pursuant to the Due Process clause turns on:

> (1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable.

Cossart, 804 F.3d at 20 (quoting C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014)).

#### a.   Relatedness

To establish relatedness, Plaintiffs must show "a demonstrable nexus between [their] claims and [Defendants'] forum-based activities, such that the litigation itself is founded directly on those activities." Adelson, 652 F.3d at 81 (cleaned up). The relatedness inquiry is both "flexible" and "relaxed." Id. The defendant's conduct in Massachusetts "must form an important, or at least material, element of proof in the plaintiff's case." Harlow, 432 F.3d at 61 (cleaned up). The relatedness analysis is similar to the "arising from" examination under the long-arm statute. See Geis v. Nestlé Waters N. Am., Inc., 321 F. Supp. 3d 230, 239 (D. Mass. 2018).

Plaintiffs have made a sufficient showing on the relatedness prong. In particular, Marissa Brunner's repeated emails to Shaun

[14]

Hamilton in Massachusetts, where he executed the booking contract and paid for the stay at the Koro Sun Resort, establishes relatedness as to Young Management. See Cossart, 804 F. 3d at 20 (finding plaintiff demonstrated relatedness because "this lawsuit arises out of . . . the contract defendants procured with a Massachusetts resident to be performed by the resident primarily from Massachusetts.").

b. Purposeful Availment

The requirements of purposeful availment are met where "a defendant deliberately targets its behavior toward the society or economy of a particular forum." C.W. Downer, 771 F.3d at 66 (internal citations omitted). "In determining whether the purposeful availment condition is satisfied, [the Court's] 'key focal points' are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5 (1st Cir. 2016). The purposeful availment prong seeks to weed out "random, fortuitous, or attenuated relationships" with the forum state. Pritzker v. Yari, 42 F.3d 53, 62 (1st Cir. 1994).

Plaintiffs have established that Young Management purposefully availed itself of the privilege of conducting activities in Massachusetts. It voluntarily sent dozens of advertisements into the commonwealth annually in an attempt to

drum up business for the Koro Sun Resort. Further, Marissa Brunner knowingly emailed Plaintiffs offers and established a contractual relationship with them while they were in Massachusetts. These activities put Young Management on notice that it could be haled into court in Massachusetts.

### c. Reasonableness

The Court must determine whether the exercise of jurisdiction accords with traditional notions of "fair play and substantial justice." Int'l Shoe, 326 U.S. at 320. In making the reasonableness determination, the Court analyzes the so-called "gestalt factors":

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Ticketmaster-New York, 26 F.3d at 209.

Defendants -- Colorado entities -- contend that it would be burdensome for them to appear in Massachusetts. While the Court does not doubt that litigating in the commonwealth would be inconvenient, the First Circuit has recognized that such inconvenience is inherent in appearing in a foreign forum and thus, a defendant must demonstrate that the "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." Nowak v. Tak How Invs.,

[16]

Ltd., 94 F.3d 708, 718 (1st Cir. 1996) (citation omitted). Further, the dearth of evidence that Plaintiffs brought this case to harass Defendants weighs against a finding for Defendants here. See id.

The second factor also favors Plaintiffs. Massachusetts has an interest in providing a forum for its citizens to vindicate contractual rights agreed to in the commonwealth and to bring tort claims caused in part by activities in Massachusetts. See Champion Exposition Servs., Inc. v. Hi-Tech Elec., LLC, 273 F. Supp. 2d 172, 179 (D. Mass. 2003).

Third, Plaintiffs' "interest in bringing [their] action in this forum, given the traditional deference accorded to a plaintiff's choice of forum, weighs in favor of personal jurisdiction." Daynard, 290 F.3d at 62.

Neither party makes a strong showing that interests of judicial administration are implicated by this Court's exercise of jurisdiction. See Nowak, 94 F.3d at 718 ("Usually this factor is a wash . . . ").

Finally, Massachusetts "has an interest in protecting its citizens from out-of-state providers of goods and services as well as affording its citizens a convenient forum in which to bring their claims." Id. at 719. On balance, in the absence of any indication of vexatious litigation or forum shopping, the gestalt

[17]

factors favor Plaintiffs. The Court will exercise jurisdiction over Young Management.

## II.     Forum Non Conveniens

Defendants argue in the alternative that the Court should dismiss the Complaint on the basis of forum non conveniens. Defendants "bear[] the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000). An alternative forum is generally adequate if the defendant may be subject to process in the forum. See Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir. 1992). At the second step, the Court looks to several factors to determine whether private and public interests favor litigating in the other forum. On the private interest side, relevant factors include:

> the relative ease of access to sources of proof; availability [and cost] of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious[,] and inexpensive.

Imamura v. Gen. Elec. Co., 957 F.3d 98, 107 (1st Cir. 2020) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). The relevant public interests include:

> the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having

[18]

the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Imamura, 957 F.3d at 107 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)).

Defendants suggest that this case is essentially a Fijian personal injury action that does not belong in Massachusetts. But they have made no showing as to the adequacy of Fiji as an alternative forum, let alone whether the relevant factors favor litigation of this case in Fiji. Without such a showing, the Court is left to apply the "strong presumption favoring the American forum selected by American plaintiffs." Mercier, 981 F.2d at 1355. On the current record, the Court in its discretion declines to dismiss the case on the basis of forum non conveniens.

## ORDER

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. 7) is **ALLOWED IN PART** and **DENIED IN PART**. Defendants Southwest South Pacific, LLC and Chipeta Sun Lodge, LLLP are dismissed from the case.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge